UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF ILLINOIS, ex rel. ELLY GUTMAN<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO VEIN INSTITUTE, DR. MENSUR O. SUNJE, and THOREK MEMORIAL HOSPITAL,<br><br>Defendants. | Case No. 1:16-cv-09734<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff-Relator Elly Gutman brings this *qui tam* suit against Defendants Chicago Vein Institute, Dr. Mensur O. Sunje, and Thorek Memorial Hospital. She claims: (1) violations of the Federal False Claims Act; (2) violation of the anti-retaliation provision of the Federal False Claims Act; (3) violation of the Illinois False Claims Act; (4) violation of the anti-retaliation provision of the Illinois False Claims Act; (5) violation of the Illinois Insurance Claims Fraud Prevention Act; and (6) violation of the anti-retaliation provision of the Illinois Insurance Claims Fraud Prevention Act. After conducting their investigations, the state and federal governments declined to intervene in this case. [11]. Defendants now move to dismiss Relator's claims. [66]; [71]. For the reasons explained below, this Court grants the motions and dismisses the Relator's second amended complaint;

1

additionally, absent any objection from the United States, the Court will dismiss the this case.[1]

## I. Background

### A. The Second Amended Complaint's Allegations

Relator Elly Gutman worked for Chicago Vein Institute (CVI) from July 5, 2016 to September 9, 2016, where she served as Practice Director. [30] ¶ 12. During those two months, Relator supervised CVI's administrative and clinical operations. *Id.* CVI diagnoses and treats various vein conditions. *Id.* ¶ 15. Defendant Dr. Mensur O. Sunje founded CVI, serves as its medical director, and is a board-certified phlebologist. *Id.* ¶ 17.

Relator alleges that in her two months with CVI, she discovered that Defendants engaged in various unlawful practices. *Id.* ¶ 14. First, she alleges that CVI performed "unnecessary" procedures for which it billed both public and private payors. *Id.* ¶ 56. Second, she alleges that: (1) CVI reported and billed procedures that it never performed; and (2) CVI "up-coded" and billed more expensive procedures than those it did perform. *Id.* Third, she claims that CVI improperly waived and/or failed to collect co-pays and deductibles on a regular basis. *Id.* ¶ 72. Fourth, she alleges CVI offered an employee an improper "bonus plan" for patient and health care provider referrals. *Id.* ¶¶ 93–94. Fifth, CVI allegedly billed procedures performed by underqualified medical staff, *id.* ¶¶ 101–06, then resubmitted these claims with Dr.

---

[1] Although the United States declined to intervene, *see* [11], 31 U.S.C. § 3730(b)(l) nonetheless provides that the action may be dismissed "only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."

2

Sunje as the procedure provider, even though he had not performed the procedures. *Id.* ¶ 116. Sixth, Relator alleges that CVI reused medical equipment (including laser fibers manufactured by "Total Vein Systems") manufactured for a single use. *Id.* ¶¶ 143–44.

Relator also levies a series of allegations against Thorek Memorial Hospital. *Id.* ¶¶ 122–41. She alleges that, Thorek fraudulently designated Dr. Sunje as its treating and primary billing physician for various dates in 2014 when Dr. Sunje was not even in Chicago and could not have been present at Thorek. *Id.* ¶¶ 128–29, 131. More specifically, Relator alleges that Dr. Sunje billed Illinois Medicaid at least $42,520.80 for services at Thorek's inpatient detoxification wing on dates when he was actually in St. Louis, working at a clinic known as Chicago Uptown Medical Center. *Id.* ¶¶ 127, 133.

After observing these actions, Relator alleges that she lodged complaints about the above practices. *Id.* ¶ 150. She further alleges that she argued with CVI management about their desire to fire staff who challenged the alleged practices. *Id.* ¶ 151. CVI terminated Relator's employment on September 9, 2016. *Id.* ¶ 168.

### B. Procedural Background

Relator filed her initial complaint on October 14, 2016. [1]. After about two years of investigation, the United States formally declined to intervene in this action, leaving Relator to pursue the case on her own. [11]. A series of amended complaints and attorney substitutions then further delayed the matter. *See, e.g.*, [27]; [30]; [34]; [37]; [44]. Eventually, in August 2019, this Court granted Relator leave to file a third

3

amended complaint and denied the pending motions to dismiss. [75]; *see also* [80].

Yet before Relator filed her third amended complaint, her third attorney sought leave to withdraw. [76]. This Court then provided Relator 90 days to seek yet her fourth attorney. [78]. Relator obtained new counsel, but instead of filing a third amended complaint, Relator's new counsel elected to file a response to Defendants' previously denied motions to dismiss, [81]; [82]. As a result, and after Relator opted to forego the opportunity to make any further amendments (or otherwise seek any supplemental discovery), this Court reinstated the second amended complaint and Defendants' motions to dismiss and set a final briefing schedule on those motions. [84], [95]. The motions now are fully briefed and ripe for resolution.

## II. Legal Standard

### A. Rule 12(b)(6) Standard

To survive a 12(b)(6) motion, a complaint must include a "short and plain statement of the claim" to show that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), and to give the Defendant "fair notice" of the claim and "the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere conclusory statements "do not suffice," nor do "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Likewise, under Rule 12(b)(6), this Court must

4

construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable references in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). This Court need not, however, accept as true conclusory assertions and statements of law. *Id.*; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### B. Rule 9(b) Standard

In this case, Relator alleges multiple counts of fraudulent activity, including claims under the False Claims Act (FCA) and Illinois False Claims Act (IFCA) (previously known as the Illinois Whistleblower Protection Act). Claims alleged under these anti-fraud statutes must meet "the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure" and state the circumstances constituting fraud or mistake "with particularity." Fed. R. Civ. P. 9(b); *United States ex rel. Gross. v. AIDS Research All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005); *see also Perez-Garcia v. Dominick*, No. 13 C 1357, 2014 WL 903114, at *4 (N.D. Ill. Mar. 7, 2014) ("IFCA claims are evaluated under standards identical to those applied in cases arising under its federal analog, the False Claims Act."). In adding "flesh to the bones" of the word "particularity," the Seventh Circuit has often held that a "plaintiff ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotations omitted). Ultimately, a plaintiff must inject "precision and some measure of substantiation" into fraud allegations. *United States and Wisc. ex rel. Presser v.*

*Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotations omitted).

Rule 9(b)'s heightened pleading requirements serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). As to the third prong, fair notice requires a plaintiff who pleads fraud to "reasonably notify the defendants of their purported role in the scheme." *Id.* at 777–78 (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)); *see also Guar. Co. of N. Am. v. Moecherville Water Dist., N.F.P.*, No. 06-cv-6040, 2007 WL 2225834, at *2 (N.D. Ill. July 26, 2007) ("The purpose of the more restrictive pleading standard is to ensure that the accused party is given adequate notice of the specific activity that the plaintiff claims constituted the fraud, so that the accused party may file an effective responsive pleading."). In cases involving multiple defendants, fair notice requires the plaintiff to plead sufficient information so that each defendant understands the allegations levied against it specifically. *Vicom*, 20 F.3d at 777–78 (explaining that fair notice demands that the plaintiff notify each defendant of its purported role in the scheme).

**III. Analysis**

    **A. Claims Against Defendants**

Relator alleges that Defendants CVI and Dr. Sunje violated the FCA under three theories of liability: Defendants (1) "knowingly present[ed] . . . a false or

6

fraudulent claim for payment," 31 U.S.C. § 3729(a)(1)(A); (2) "knowingly ma[de], us[ed], or caus[ed] to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B); and (3) "knowingly conceal[ed] or knowingly and improperly avoid[ed] . . . an obligation to pay" the Government, § 3729(a)(1)(G). [30] at Counts I, III, V. Relator also alleges that these Defendants violated the FCA by "offering and paying kickbacks to beneficiaries in the form of waived co-pays and deductibles for CVI services." *Id*. ¶ 175. She makes the same allegations against CVI and Dr. Sunje under the IFCA. *Id*. at Count VIII. Relator additionally claims that CVI violated the FCA's and IFCA's anti-retaliation provisions. *Id*. at Counts VII, IX. Finally, she alleges that CVI and Dr. Sunje violated the Illinois Insurance Claims Fraud Prevent Act (IICFPA) and the IICFPA's anti-retaliation provision. *Id*. at Counts X, XII.

Relator alleges that Defendant Thorek violated the law under the same three provisions of the FCA. *Id*. at Counts II, IV, VI. Relator also alleges Thorek violated the IICFPA. *Id*. at Count XI.

B.     **Forfeiture**

In their motions to dismiss, CVI, Dr. Sunje, and Thorek presented numerous reasons why Relator fails to sufficiently allege the claims against them. [67]; [72]. Yet Relator's four-page response utterly ignores these arguments and instead merely provides a two-paragraph argument, claiming (without elaboration, explanation or support) that the SAC presents a plausible cause of action for all counts. [82] at 3–4. Relator represents that, although she "may not have described the exact details," she

7

"has set out allegations sufficient to defeat a Motion to Dismiss." *Id.* at 3. In fact, Relator's complete failure to address or respond to Defendants' arguments constitutes an independent basis to dismiss Relator's complaint. *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 805 (N.D. Ill. 2015) (citing *Copeling v. Ill. State Toll Highway Auth.*, No. 12 C 10316, 2014 WL 540443, at *2 (N.D. Ill. Feb. 11, 2014)) ("By failing to respond to Defendants' motion to dismiss . . . Plaintiffs forfeit the issue."). As such, this Court dismisses the second amended complaint because Relator forfeited any response to Defendants' arguments. *See also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so.") (citing *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir.1995); *Teumer v. General Motors Corp.*, 34 F.3d 542, 545–46 (7th Cir.1994); *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir.1994); *Brooks v. Ferguson–Florissant School District*, 113 F.3d 903, 905 (8th Cir.1997)).

### C.    Rule 9(b)

Additionally, this Court further finds that Relator fails to meet Rule 9(b)'s requirements, and thus, dismisses her complaint on that basis as well.

First, Relator's complaint makes improper generalized allegations against the

various Defendants. As an example, she alleges that Dr. Sunje and CVI instituted a business model wherein they induced "as many patients as possible to agree to undergo vascular treatments at CVI, regardless of their medical conditions and regardless of their eligibility for insurance coverage." [30] ¶ 54. Relator then alleges that "Defendants would either perform an unnecessary procedure and then bill the government and private insurers; not perform any procedures and bill the government and private insurers; or up-code the procedures CVI provided." *Id.* ¶ 57. Although Relator mentions that CVI acted under Dr. Sunje's direction, *see, e.g., id.* ¶ 54, Relator's allegations lack "any detail about who did what fraudulent activity," which "necessarily fails to satisfy Rule 9(b)," *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). For example, the allegations fail to define CVI's role in creating any fraudulent bills or approving any fraudulent bills, *id.* ¶ 142. Relator repeats this generalized pattern throughout her allegations. *See* [30] ¶¶ 57, 60, 142, 169, 173, 214, 226.

This failure to plead with particularity is fatal under Rule 9(b). *U.S. ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 895 (N.D. Ill. 2009) ("The FCA is an anti-fraud statute and claims brought pursuant to the FCA are subject to the heightened pleading requirements of Rule 9(b)."); *United States v. Walgreen Co.*, 417 F. Supp. 3d 1068, 1084 (N.D. Ill. 2019) (citing *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1109 (7th Cir. 2014)) ("Courts evaluate IFCA claims under the same standards as those applicable to FCA claims."); *Kalec*, 84 F. Supp. 3d at 806 (explaining that claims brought under FCA's

9

prohibition on kickbacks "are also governed by Rule 9(b) and case law makes clear that they are"); *Walner*, 660 F. Supp. 2d at 896 ("Typically, FCA claims fail because the plaintiff can only point to a fraudulent scheme and [is] unable to present evidence at an individualized transactional level."); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 841 (7th Cir. 2018) (affirming the district court's dismissal of the relator's claims because the complaint failed to allege "any specific facts demonstrating what occurred at the individualized transactional level for each defendant").

As noted below, Relator's complaint fails to meet these standards as to each Defendant.

    1.    CVI

Relator's allegations against CVI lack particularity. Relator repeatedly alleges that CVI engaged in misconduct (such as billing for unnecessary procedures or billing for services and supplies not provided to patients, or reusing laser fibers designed for one-time use). [30] ¶¶ 56, 142, 143. But she fails to provide any supporting facts as to "when" such misconduct occurred, or any other transactional-level details such as who participated in carrying out the procedure, what the fraudulent bill said, who participated in drafting and submitting the fraudulent billing, or any description of each individual or entities' role within the allegedly fraudulent conduct. *Kalec*, 84 F. Supp. 3d at 800 (citing *United States ex rel. Geschrey v. Generations Healthcare, LLC,* 922 F. Supp. 2d 695, 702 (N.D. Ill. 2012)) (noting that while the relator need not provide the details of every fraudulent transaction when the defendant engages in

10

numerous wrongful transactions, she must still "provide representative examples"). And as to her kickback theory, Relator similarly never provides specific instances where CVI and/or Dr. Sunje paid a referral or bonus. *Id.* at 806 ("To adequately plead a violation of the FCA based on a violation of the AKS, . . . Plaintiffs must allege the who, what, when, where, and how of the underlying alleged fraud."); *See* [30] ¶¶ 112–18, 120 (allegations lacking specific information such as who performed the relevant procedures and what date the procedures took place). Accordingly, this Court dismisses the allegations against CVI for failure to meet Rule 9(b)'s particularity requirement.

      2.     Dr. Sunje

Relator's allegations against Dr. Sunje follow the same pattern of generalized allegations as her allegations against CVI. She alleges that:

- Dr. Sunje falsified "test results and medical records in order to justify performance of just enough procedure on each patient to maximize the amount of reimbursement," [30] ¶ 54, and improperly billed Medicare, Medicaid, and private insurers for unnecessary procedures or procedures not performed, *id.* ¶¶ 56–58;

- Made statements during a "Billing & Coding Summit" that could be read nefariously or could be read as wanting to ensure CVI properly bills procedures, *id.* ¶¶ 64–70 (e.g., stating that when billing, staff must "credential" because insurance will suspect fraud and flag bills if CVI submits several bills in a single day under Dr. Sunje's name);

- Instructed CVI staff not to turn over to third-party collection agencies patient statements requesting deductibles and co-pays after a 90-day grace period expired, *id.* ¶ 77, and instructed Relator not to seek payment "from a group of patients who referred business to CVI," *id.* ¶ 79;

- Offered an individual named Lisa Schultz a "Patient Referral Bonus" as part of a bonus incentive plan, *id.* ¶¶ 93–94;

11

- Billed Illinois Medicaid for services provided at Thorek's inpatient detoxication wing on dates when he allegedly was not in Chicago, *id.* ¶ 133;

- Instructed PAs to bill for patients who Dr. Sunje did not treat, *id.* ¶¶ 135–36; and

- Directed CVI to bill for services and supplies not actually provided to patients, *id.* ¶ 142.

While Relator alleges serious misconduct, she again fails to include the requisite particularity and transactional-level details necessary for her claims to proceed. By way of example, Relator's allegations fail to identify any specific unnecessary procedure, she provides no dates, no names, no details about what information CVI provided when it billed to Medicare or Medicaid in order to induce payment, and no details about Dr. Sunje's role in submitting or approving any particular fraudulent bill. Relator's most complete allegation against Dr. Sunje states that CVI improperly coded a procedure because "on July 10, 2014 at 6 pm, at the same time Dr. Sunje was performing hemorrhoid surgery, [Medical Assistant] Kostic performed ultrasound guided sclerotherapy. This false claim was billed to Medicaid for payment on the same day and, upon information and belief, was paid by Medicaid." *Id.* ¶ 107. But even this claim lacks concrete details regarding the alleged false nature of the claim or Dr. Sunje's role, if any, in this purported fraudulent billing. Because Relator failed to submit any allegations that conform to Rule 9(b)'s requirements, this Court dismisses the claims against Dr. Sunje.

    3.     Thorek

Finally, Relator's claims against Thorek are woefully deficient. In fact, Relator never even pleads that Dr. Sunje involved any Thorek employees in his alleged

12

scheme. She also provides no facts regarding any false claims Thorek made, how or when it submitted those claims, or what specific claims it submitted to Medicare or Medicaid. In fact, as it relates specifically to Thorek, Relator alleges only that Dr. Sunje worked on Thorek's staff; she then alleges in conclusory fashion that Thorek submitted false claims to Illinois Medicaid and private insurers. [30] ¶¶ 19, 21. In direct contradiction, Relator also alleges that Dr. Sunje's agents, not Thorek or its employees, billed Illinois Medicaid. *Id.* ¶ 130. Accordingly, this Court dismisses the claims against Thorek for failure to meet Rule (9)(b)'s particularity requirements.

### D.     Relator's Reliance on *Presser*

Relator's undeveloped references to *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC* and *United States ex rel. Lusby v. Rolls-Royce Corporation* in her response, [82] at 2–3, are unavailing.

In *Presser*, the Seventh Circuit examined and applied *Lusby* in holding that the relator had pled an FCA claim with particularity. *Presser*, 836 F.3d at 777–78. The Seventh Circuit stated that even when a relator does not provide facts "showing a specific request for payment," a claim can survive Rule 9(b) if the alleged facts necessarily lead one to the "conclusion that the defendant had presented claims to the Government." *Id.* The Seventh Circuit then listed the necessary allegations that met this threshold, noting that all of defendant's patients were on Medicare and that the questionable procedures were applied to all patients at the clinic. *Id.* at 778. The Seventh Circuit also recognized that when considering the relator's position as a nurse practitioner, "a position that does not appear to include regular access to

13

medical bills, we do not see how she would have been able to plead more facts pertaining to the billing process." *Id.*

*Presser* does not help Relator. First, Relator's complaint does not include the necessary allegations allowing this Court to infer that CVI submitted false claims. For example, she does not allege that all of the CVI patients are covered under Medicare; nor does she allege that CVI provided unnecessary procedures to all patients. Second, as the Program Director, Relator did not experience the same information asymmetry as the relator in *Presser*. [30] ¶ 12 (conceding her role gave her the ability to "supervise the operations" of CVI, "including both administrative and clinical matters"). Given her access to the relevant medical records and her ten years of experience in the healthcare industry at that time, *id.*, Relator enjoyed access to the information needed to plead the alleged fraud in detail.

### E. Failure to State a Claim

As to the remaining claims that do not sound in fraud, Relator has not only forfeited any response to the motions to dismiss, but she also fails to state a claim under Rule 12(b)(6).

#### 1. Retaliation

As to the retaliation claims, Relator states that CVI and Dr. Sunje retaliated against her by wrongfully terminating her employment. [30] ¶ 169. While the FCA and the IFCA protect employees from retaliation for instituting a *qui tam* action or gathering evidence of fraud in order to do so, Relator must nonetheless show that CVI and Dr. Sunje retaliated against her because of her actions taken in furtherance of a

14

*qui tam* action, not merely that they retaliated against her because she discovered or complained of fraud. *United States ex rel. Rockey v. Ear Inst. of Chi., LLC*, 92 F. Supp. 3d 804, 826–27 (N.D. Ill. 2015). While Relator alleges that she expressed concerns to Dr. Sunje about CVI's practices, [30] ¶ 150, she does not allege that CVI fired her because of her role in furtherance of a *qui tam* action, *see id*. ¶¶ 146–70. Thus, her retaliation claims fail. *Grenadyor,* 895 F. Supp. 2d at 881 (dismissing retaliation claims when the relator did not allege that he was fired for engaging in the investigation of a possible FCA claim or for refusing to participate in the fraud, but instead for merely discussing his concerns with his employers).

### 2. Failure to State an IICFPA Claim

Relator alleges that Defendants violated the IICFPA by submitting false claims to private insurers. [30] Counts X, XI. But the IICFPA requires a plaintiff to identify a specific fraudulent scheme against, or misrepresentation made to, a private insurer. *State ex. rel. Estate of Feingold v. ConvaTec, Inc.*, 2019 IL App (1st) 181560-U, ¶ 16, *appeal pending* (Nov Term 2019) (citing 740 ILCS 92/1 *et seq*.) ("The Illinois General Assembly adopted the Insurance Claims Fraud Prevention Act (the 'Act') in 2001, imposing civil penalties for fraud against private insurance companies."), and Relator never names any private insurer relevant to this case, let alone a specific fraud by Defendants against one. *See generally* [30]. Thus, Relator's IICFPA allegations fail to state a claim. *State of Illinois ex rel v. Ati Holdings, INC.*, No. 12CH27483, 2013 WL 3779568, at *4 (Ill. Cir. Ct. June 18, 2013) (dismissing IICFPA claims when the complaint failed to identify a specific misrepresentation made to any

private insurer); *see also United States v. A Plus Physicians Billing Serv., Inc.*, No. 13 C 7733, 2015 WL 4978686, at *5 (N.D. Ill. Aug. 20, 2015) (explaining that IICFPA prohibits individuals and entities from making false claims to insurance companies).

### F. Dismissal with Prejudice

Finally, this Court considers whether the second amended complaint should be dismissed with prejudice. Relator filed this case four years ago and has amended her complaint several three times already, without success. In fact, in the face of the instant motions to dismiss, Relator initially elected to amend again, but then changed her mind and elected to instead litigate the motions to dismiss. She then elected to oppose the motions, not with substance, but with a cursory two-paragraph stand. Given the duration of the case, and given that Relator already had the opportunity to conduct discovery and amend her complaint multiple times, but nonetheless has still failed to add sufficient facts to her complaint (despite her position at CVI providing access to CVI's and Dr. Sunje's administrative and clinical practices, including first-hand knowledge arising from her "access to" and review of "certain aspects of CVI's medical billing software," [30] ¶ 87), this Court declines to allow any further amendment. Defendants would face undue prejudice if forced to defend against yet another complaint concerning conduct that allegedly occurred more than six years ago. And, based upon the record, Relator remains unable to sufficiently allege these claims, making further amendments futile. *See, e.g., Hughes v. Sw. Airlines Co.*, 409 F. Supp. 3d 653, 659 (N.D. Ill. 2019), aff'd, 961 F.3d 986 (7th Cir. 2020) (dismissing complaint with prejudice where plaintiff had prior opportunity to amend and still

16

failed to state a claim) (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas–Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss)). *See also Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) ("[District] courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.")

For these reasons, this Court dismisses the Relator's claims with prejudice.

**IV. Conclusion**

For the reasons explained above, the Court grants Defendants' motions to dismiss, [66], [71], and dismisses the second amended complaint [30]. Absent an objection from the United States, the Court will direct the Clerk to enter a final judgment of dismissal. For now, all dates and deadlines are stricken.

Dated: January 19, 2021

Entered:

John Robert Blakey
United States District Judge

17